IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JEREMY LOCKETT,

                        Plaintiff,

    v.                                                          ORDER

DR. COX, J. LABELLE, and DR. MANLOVE,                16-cv-601-jdp

                        Defendants.

---

Plaintiff Jeremy Lockett, a prisoner incarcerated at the Wisconsin Secure Program Facility, brings this lawsuit alleging that defendant prison officials failed to properly treat his H. pylori bacterial infection and other gastrointestinal problems. The parties have filed dueling motions for summary judgment. After considering the parties' submissions, I will grant defendants' motion regarding Lockett's claims against defendants James LaBelle and Jeffrey Manlove. But I conclude that summary judgment is inappropriate for either party regarding Lockett's claim that defendant Burton Cox failed to provide him with antibiotics after Cox concluded that Lockett had an H. pylori infection. I will grant Lockett's motion for recruitment of counsel to assist him with his claim at trial.

UNDISPUTED FACTS

The following facts are drawn from the parties' summary judgment materials, and are undisputed unless noted otherwise.

A. Parties

Plaintiff Jeremy Lockett is an inmate at the Wisconsin Secure Program Facility (WSPF), a maximum security prison operated by the Wisconsin Department of Corrections (DOC) in

Boscobel, Wisconsin. Defendant Burton Cox, D.O., was a physician at WSPF until late July 2015. Defendant James LaBelle is a regional nursing coordinator responsible for reviewing health-care-related grievances filed by inmates at Wisconsin prisons. Defendant Jeffrey Manlove is a physician at Waupun Correctional Institution who occasionally provided on-call services at other prisons, including WSPF.

**B. H. pylori infection**

On January 22, 2015, Lockett submitted a health service request form (HSR) stating that his stomach had been hurting for a week and a half, and he had been vomiting. Lockett was seen the next day by a Nurse Anderson, who followed nursing protocols for nausea/vomiting and abdominal pain and provided Pepto-Bismol tablets for one month. Anderson advised Lockett to avoid food that aggravated his symptoms. On January 24, 2015, Lockett submitted another HSR stating that the medication he was given for his stomach was not working. Nurse Anderson forwarded Lockett's request to defendant Dr. Cox.

Two days later, Cox saw Lockett and prescribed omeprazole, a proton-pump inhibitor used to treat gastroesophageal reflux disease. On February 5, 2015, Cox saw Lockett again and increased the omeprazole prescription and ordered blood tests including a test for H. pylori infection. H. pylori infection occurs when a type of bacteria called Helicobacter pylori infects the stomach. It can cause peptic ulcers and other signs and symptoms, including abdominal pain, nausea, and unintentional weight loss.

Lockett's test results came back positive for H. pylori. Cox reviewed the results on February 12, 2015. Cox says that his practice when a patient tests positive for H. pylori infection is to order a course of two antibiotics to treat the infection, then retest the patient after four weeks to ensure the treatment was effective. But that did not happen here. Cox says

2

that he does not know why antibiotics were not ordered, but he says that the "oversight or omission by him or his nursing staff was completely inadvertent." Cox suggests possible reasons for this mistake: his failure to place the lab report in the designated pile, nursing staff's failure to properly process the lab report, or his failure to follow-up by entering a prescriber's order in the chart.

Lockett says that he "continued to complaint to HSU [the Health Services Unit] explaining that he is in pain (Abdominal) and can't sleep and continue to throw up and the HSU always says that they are going to refer Lockett to the Doctor." Dkt. 21, at 1. Defendants say that Lockett did not file another HSR about the problem for months, except for a March request to see the results of the blood test. Lockett received updated prescriptions for Loratadine (for allergies) in May and Folic Acid (for anemia) and Hydroxyurea (for sickle cell) in early July, but these prescriptions did not require Cox to review Lockett's file.

Defendant Cox stopped working at WSPF in late July 2015. Although he filled in on an as-needed basis after his departure as the full-time physician, he no longer was responsible for directing patient care with respect to WSPF inmates. There is no indication Dr. Cox treated Lockett while filling in at WSPF after July 2015.

At some point before November, Lockett saw an outside provider via tele-med, and an upper endoscopy procedure, blood test, and Zantac were ordered.

In early November 2015, Lockett was sent out of the prison to the emergency room for sickle-cell treatment. An outside provider started Lockett on antibiotics for H. pylori. Lockett saw the outside provider again in November 2015 and January 2016. It appears that one of the two antibiotics Lockett was prescribed was changed in January. He also received acidophilus with pectin in an effort to restore his normal gastric flora.

## C. Grievance following provision of antibiotics

Lockett filed a grievance regarding his medical care on January 20, 2016. The grievance stated in full:

> On [January 20, 2016] I went to Boscobel Hospital for my final appointment. I was diagnose with H-Pylori from the un-sanitary water, and mold around the sinks. It took WSPF HSU 1 year to send me out to the Hospital, which if done early I wouldn't have been in pain. I kept complaining to them about the pain in my stomach, and that it was causing me to eat less and be in daily pain. Instead they kept giving me things that didn't work. If they would've sent me out right away the H-Pylori would've been caught earlier and treated faster.

A complaint examiner at WSPF investigated Lockett's grievance, recounted his treatment history discussed above, and recommended dismissal of the grievance after concluding that Lockett was receiving treatment for his problems and that he had not recently filed a complaint about stomach pain.

The recommendation to dismiss the grievance was reviewed by defendant LaBelle. LaBelle stated the following in dismissing the grievance:

> It is not always prudent to send people off site for treatment. In this case the situation has some resolve but it did not totally resolve in the initial stages. The infection was reduced but the normal flora didn't seem to grow fast enough to be effective. It was at that time an outside entity was incorporated to bridge this gap. The patient appears to be in remission at this time and should be able to access the HSU staff if anything further arises.

## D. Diet

Lockett wrote a series of HSRs in January and February 2016 about his infection, pain, vomiting, and diarrhea. In particular, on February 12, 2016, Lockett wrote WSPF health services staff complaining that his stomach was still bothering him and that he continued to vomit and have diarrhea despite his medications. Defendant Dr. Manlove was contacted as the

4

on-call physician on February 13, 2016. A nurse described Lockett's symptoms to Manlove and informed him that Lockett started a course of antibiotics on January 20, 2016, after testing positive for H. pylori. Specifically, Lockett had completed an antibiotic called Clarithromycin, and was still taking an antibiotic called Amoxicillin twice per day. Lockett was also still taking omeprazole, the proton-pump inhibitor used to reduce stomach acid.

Manlove recommended staff obtain a stool sample to test for C. diff (clostridium difficile), which is another type of bacterial infection that can cause diarrhea, and he recommended that Lockett avoid dairy while his symptoms persisted. Lockett was placed on a "no dairy" diet for two weeks from February 14 to February 28, 2016. Manlove recommended a dairy-free diet because lactose can be difficult to digest and eliminating dairy could help improve Lockett's symptoms. Since Lockett was already on antibiotics and omeprazole to address his stomach issues, Manlove believed there were very few alternatives.

Lockett submitted an HSR on February 17 asking why he was on a no-dairy diet and why staff took a stool sample to test for lactose intolerance instead of giving Lockett a breath test. Staff responded that the no-dairy diet was in response to Lockett's complaints of vomiting and diarrhea, and staff also responded that Lockett was given a stool sample because "[t]his what [sic] the doctor ordered." The HSR was not forwarded to Manlove.

Manlove was contacted regarding Lockett three other times. On March 21, 2016, Manlove ordered Vancomycin, a different antibiotic used to treat C. diff, implemented the C. diff protocol, and ordered a re-test for C. diff after the course of Vancomycin was completed. On March 23, Manlove ordered that Lockett be sent to the local emergency room for evaluation and treatment of his stomach and chest pains. On March 26, 2016, when Lockett was discharged from the hospital, Manlove was notified of the offsite provider's recommendations

to discontinue the C. diff precautions, discontinue several medications, and order a clear liquid diet.

Manlove was never consulted regarding Lockett's request to be placed on a "bland diet." Lockett submitted an HSR requesting a bland diet on March 3, 2016. WSPF staff responded that "DOC no longer has a bland diet" and that Lockett would "need to self select." Although Manlove had no involvement in denying Lockett's request, Manlove confirms that DOC did not offer a bland diet as of March 3, 2016, and that with no available bland diet, inmates would have to self-select food choices to limit intestinal discomfort symptoms. DOC did start offering a bland diet around May of 2016.

ANALYSIS

A.  **Summary judgment**

Summary judgment is appropriate if a moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When, as here, the parties have filed cross-motions for summary judgment, the court "look[s] to the burden of proof that each party would bear on an issue of trial; [and] then require[s] that party to go beyond the pleadings and affirmatively to establish a genuine issue of material fact." *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997). If either party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment against that party is appropriate. *Mid Am. Title Co. v. Kirk*, 59 F.3d 719,

721 (7th Cir. 1995) (quoting *Tatalovich v. City of Superior*, 904 F.2d 1135, 1139 (7th Cir. 1990)). "As with any summary judgment motion, this [c]ourt reviews these cross-motions 'construing all facts, and drawing all reasonable inferences from those facts, in favor of . . . the non-moving party.'" *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir. 2008) (quoting *Auto. Mechs. Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 748 (7th Cir. 2007)).

The Eighth Amendment prohibits prison officials from acting with deliberate indifference to prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). A "serious medical need" may be a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Johnson v. Snyder*, 444 F.3d 579, 584–85 (7th Cir. 2006). A medical need may be serious if it is life-threatening, carries risks of permanent serious impairment if left untreated, results in needless pain and suffering, significantly affects an individual's daily activities, *Gutierrez v. Peters*, 111 F.3d 1364, 1371–73 (7th Cir. 1997), or otherwise subjects the prisoner to a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). The parties do not appear to be disputing that Lockett's gastrointestinal problems gave rise to a serious medical need.

To be considered "deliberately indifferent," an official must know of and disregard "an excessive risk to an inmate's health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Snipes v. Detella*, 95 F.3d 586, 590 (7th Cir. 1996). However, inadvertent error, negligence, gross negligence, and ordinary malpractice are not cruel and unusual punishment within the meaning of the Eighth Amendment. *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996).

7

## B. Defendant Cox

Lockett claims that he suffered a ten-month delay in receiving antibiotics to treat his H. pylori infection because defendant Dr. Cox prescribed him omeprazole and did not waver from that treatment even though it was not effective in treating Lockett's condition. At summary judgment, Cox admits that the normal course of treatment would be to provide antibiotics and that he does not know why that did not happen in this case. He states that the failure to provide antibiotics could only have been the result of a mistake by him or his nursing staff. Cox argues he is entitled to summary judgment because negligent actions do not violate the Eighth Amendment and because Lockett did not file any follow-up complaints about the problem until after Cox had left WSPF.

Lockett states that he did in fact continue to complain about the H. pylori infection, but he fails to show that Cox actually saw any of these complaints. Nonetheless, the facts here are sufficient to defeat defendants' motion for summary judgment because Cox essentially admits to providing Lockett with substandard treatment after initially diagnosing him with the infection. A reasonable jury might very well conclude that the failure to provide antibiotics was the result of Cox's or other medical staff's negligence, which is not enough to violate the Eighth Amendment. But a reasonable jury could also disbelieve Cox's explanation, and instead infer that Cox intentionally chose not to provide Lockett with the usual course of treatment. This factual dispute over the reason for Cox's failure to properly treat Lockett must be resolved by a jury. Accordingly, I will deny both parties' motion for summary judgment on this claim.

## C. Defendant LaBelle

In his brief opposing defendants' motion for summary judgment, Lockett contends that LaBelle "is the nursing coordinator so that he can make sure that staff are following the rules

8

and making sure that the Health Service staff . . . are not violating inmates rights, and have the [authority] to review inmate's files to see if everything is in order . . . ." Dkt. 32, at 3.[1] But in cases under 42 U.S.C. § 1983, a plaintiff cannot "rely on the doctrine of respondeat superior to hold supervisory officials liable for the misconduct of their subordinates. . . . Rather, the supervisory officials also must have had some personal involvement in the constitutional deprivation, essentially directing or consenting to the challenged conduct." *Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 615 (7th Cir. 2002). In short, LaBelle's status as a supervisor is not enough to support an Eighth Amendment claim. The question is whether LaBelle acted with deliberate indifference toward Lockett's medical needs.

As set forth in my order screening the complaint, Lockett's claim against LaBelle is that he failed to intervene in his care and instead dismissed his January 2016 grievance about continuing stomach issues after he had been provided antibiotics. But the parties' summary judgment materials show that Lockett's grievance was about the delay in providing him antibiotics, not with his treatment following the provision of antibiotics. In screening the complaint, I explicitly stated that Lockett could not proceed on a claim against Labelle for failing to intervene in the ten-month delay in providing antibiotics, because that alleged misconduct had already been completed by the time LaBelle reviewed the grievance. Dkt. 6, at 4. LaBelle's response to Lockett's grievance was to cite the treatment history noted by the institution complaint examiner and tell Lockett that he "appears to be in remission at this time and should be able to access the HSU staff if anything further arises." Dkt. 29-1, at 4. Nothing

---

[1] Although Lockett filed his own motion for summary judgment, his brief in support of that motion focuses on defendants Cox and Manlove, so I do not take him to be moving for summary judgment on his claim against LaBelle.

in this response could lead a reasonable jury to conclude that LaBelle was deliberately indifferent to Lockett's plight: he told Lockett that the delay had been addressed and to contact the HSU if need be. That is a reasonable response for a high-level supervisor to make in response to a grievance that did not even raise Lockett's concerns about his treatment *following* the provision of antibiotics. Accordingly, I will grant defendants' motion for summary judgment on this claim.

**D. Defendant Manlove**

Lockett brings an Eighth Amendment claim against defendant Manlove for making inadequate decision about dietary restrictions following his prescription for antibiotics—he says that his stomach continued to hurt and "burn" even despite the provision of antibiotics and a special diet. Defendants contend that Lockett failed to exhaust his administrative remedies regarding this claim.

Under the Prison Litigation Reform Act, "[n]o action shall be brought with respect to prison conditions . . . until such administrative remedies are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement is mandatory and "applies to all inmate suits." *Woodford v. Ngo*, 548 U.S. 81 (2006); *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The exhaustion requirement's primary purpose is to "alert[ ] the state" to the problem "and invit[e] corrective action." *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004).

Section 1997e(a) requires "proper exhaustion," *Woodford*, 548 U.S. at 93; *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002), which means that the prisoner must follow prison rules when filing the initial grievance and all necessary appeals, "in the place, and at the time, the prison's administrative rules require." *Burrell v. Powers*, 431 F.3d 282, 284–85 (7th Cir. 2005). "[A] prisoner who does not properly take each step within the administrative

10

process has failed to exhaust state remedies." *Pozo*, 286 F.3d at 1024. The Wisconsin Department of Corrections uses a four-step process called the Inmate Complaint Review System to review inmate grievances. *See* Wis. Admin. Code Ch. DOC 310.

The state says that Lockett did not file a grievance about the denial of a bland diet, and he only made passing reference to Manlove's decision to give him a lactose-free diet in his *appeal* of grievance no. WSPF-2016-1669, a grievance focusing on the inadequacy of medical treatment for his H. pylori. Lockett does not address the exhaustion argument in his response.

I conclude that Lockett has failed to exhaust his administrative remedies on his claim against defendant Manlove. He simply did not raise his diet issues to the institution complaint examiner. This court had previously concluded that a passing reference to an issue in an appeal is insufficient to fully exhaust a claim. *See Miller v. Larson*, No. 15-cv-580-wmc, 2017 WL 2126883, at *4 (W.D. Wis. May 16, 2017); *Malone v. Clark*, No. 04-cv-229-bbc, 2004 WL 2504211, at *5 (W.D. Wis. Oct. 26, 2004). It is not surprising that the lactose-free diet was not mentioned in the original grievance because the grievance predates Manlove's issuance of that diet. But Lockett's failure to raise his diet issues directly to the institution complaint examiner means that I must dismiss this claim without prejudice for his failure to properly exhaust it. *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) (dismissal for failure to exhaust is always without prejudice).

E. **Counsel**

Lockett has filed a motion he styles as one for reconsideration of my previous decision to deny his motion for the court's assistance in recruiting him counsel. Dkt. 37. I denied his previous motion at the outset of the proceedings in part because it was too early to tell whether the complexity of the case would outstrip his abilities. Now that the case will be proceeding to

trial on Lockett's claim against defendant Cox, I conclude that Lockett would greatly benefit from representation in this case involving relatively complex medical issues. Therefore, I will grant Lockett's motion and attempt to recruit counsel to represent him in this case. A new schedule will be set after counsel is located.

ORDER

IT IS ORDERED that:

1. Defendants' motion for summary judgment, Dkt. 24, is GRANTED in part: plaintiff Jeremy Lockett's claims against defendants James LaBelle and Jeffrey Manlove are DISMISSED. Defendants' motion is DENIED regarding plaintiff's claim against defendant Burton Cox.

2. Plaintiff's motion for summary judgment, Dkt. 19, is DENIED.

3. Plaintiff's motion for recruitment of counsel, Dkt. 37, is GRANTED. A new schedule will be set after counsel is located.

Entered February 27, 2018.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge